No. 40,657

U. S. McDONALD, *Appellant,* v. ALBERT CARLSON, also known as A. A. CARLSON, *Appellee.*

(322 P. 2d 798)

Opinion filed
March 8, 1958.

*Harold H. Chase,* of Salina, argued the cause, and *Robert L. Gowdy,* of Salina, was with him on the briefs for the appellant.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *Tom Lillard, Jr.,* both of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This action was originally commenced to recover rentals as provided in a farm lease executed between the lessor, U. S. McDonald, as guardian of two incompetent persons, Mary Ann Diepenbrock and August Henry Diepenbrock, and the lessee, A. A. Carlson, also known as Albert Carlson.

Successor guardians to McDonald were later appointed by the probate court and the appeal is from orders of the trial court abating the action or, in the alternative, declaring the judgment dormant, and overruling a motion to substitute the successor guardians for the original guardian.

We are first confronted with a motion by appellee to dismiss the appeal on the ground our rule No. 5 as to the furnishing of an abstract was not complied with but this matter was corrected by a previous order of the court to the effect that appellant's brief was to be considered as an abstract also. Two other grounds are relied upon in the motion to dismiss but they cannot be determined without determining also the questions involving the merits of the appeal and we will, therefore, pass them at this time.

Allegations of the original petition pertinent to this appeal are as follows:

"1. That U. S. McDonald is the duly qualified and acting guardian of the estate and person of Mary Ann Diepenbrock, an incompetent person and is

the duly qualified and acting guardian of the estate and person of August Henry Diepenbrock, an incompetent person, that said incompetent persons, together with their guardian are residents of Saline County, Kansas.

. . . . . . . . . . . . . . .

"3. That the said incompetents Mary Ann Diepenbrock and August Henry Diepenbrock are the owners of adjoining tracts of farm land which for many years have been farmed together as one unit . . .

"4. That the plaintiff in his aforesaid guardianship capacities on August 1, 1952, by a written lease agreement duly executed by plaintiff and defendant . . . let to said defendant Albert Carlson also known as A. A. Carlson, the following described real property to wit:

[Description follows.]

. . . . . . . . . . . . . . .

"8. That on September 20, 1953, the Probate Court of Saline County, Kansas, ordered petitioner herein· to take the necessary court action to enforce said lease agreement."

The farm lease was marked Exhibit "A" and made a part of the petition. Pertinent portions thereof read:

"That U. S. McDonald, guardian of the estates and persons of Mary Ann Diepenbrock and August Henry Diepenbrock, lessor, in consideration of the rents and covenants hereinafter stipulated to be paid and performed by Albert Carlson, lessee, and his assigns, does hereby grant, demise and lease unto said lessee, his executors, administrators and assigns, the following described premises, to-wit:

[Description follows.]

. . . . . . . . . . . . . . .

"Said lessee, Albert Carlson, does hereby covenant and agree with lessor and his successors as follows:

"(a) That he will pay to said lessor, U. S. McDonald, Guardian as aforesaid, or his successors, cash rent as follows, receipt of which is hereby acknowledged by said lessor . . .

"And said lessor, U. S. McDonald, covenants and agrees . . . the said lessee, Albert Carlson . . . shall lawfully, peaceably and quietly hold . . . said premises . . . without any let, hinderance, ejection or molestation by said lessor or any person or persons lawfully claiming under them."

Carlson's answer admitted paragraphs 1, 2, 3, 4, and 5 of the petition and further stated in ·substance that if McDonald was ordered as set out in paragraph 8 thereof, the order was made without notice to or knowledge of Carlson and upon improper and incorrect information furnished the court by McDonald. McDonald's reply admitted the court ordered the case filed without notice to or knowledge of Carlson.

The case was tried before a jury, in an advisory capacity, and it returned its special findings and verdict in favor of McDonald

on March 27, 1954. There were several posttrial motions filed by Carlson and while it was not the next incident pertinent hereto in point of time, a journal entry was signed by the trial court on January 31, 1955. The posttrial motions were overruled by the journal entry and judgment entered on the special findings and verdict of the jury.

On April 22, 1954, the probate court of Saline county accepted the resignation of McDonald as guardian of the two incompetent persons and on the same date appointed Anna Ellis as guardian of the person and estate of Mary Ann Diepenbrock, and appointed Clara Kogler as guardian of the person and estate of August Henry Diepenbrock. McDonald was finally discharged on June 1, 1954. Carlson contends that McDonald's death on June 11, 1954, was a pertinent date under his theory of this appeal but in view of the allegations of the petition and the provisions of the farm lease, we cannot agree with Carlson that McDonald's death has anything to do with the question before us. The farm lease was executed and the action begun on behalf of the incompetent persons and not in McDonald's personal capacity.

Carlson, on July 7, 1955, filed an affidavit for dismissal of a non-revivable action under G. S. 1949, 60-3207, 60-3215, and 60-3216, which affidavit was not ruled upon. Later, on November 15, 1956, Carlson filed an affidavit for dismissal of a non-revivable action or, in the alternative, for abatement of a non-revivable dormant judgment, which was sustained on November 17, 1956, as follows:

"(1) By reason of the facts set forth in the aforesaid Affidavit, either said action is dormant and non-revivable and the orders and judgment in said Affidavit mentioned are null and void, or said judgment is dormant and non-revivable.

"(2) In either event, said judgment should be nullified and abated on the record.

"(3) If said judgment ever had any validity, it became effective on March 27, 1954, the date of the jury verdict herein, by the doctrine of relation back nunc pro tunc, and would now have been dormant more than two (2) years . . . ."

and the judgment entered was thereby nullified and abated.

On December 4, 1956, a motion to substitute the new guardians for McDonald was filed which showed they had been duly appointed and acting guardians since April 22, 1954. This motion used the words "revive" and "substitute" interchangeably and the trial court, in overruling it on January 15, 1957, so considered the

motion. The trial court assigned its previous order of November 17, 1956, as its reason for overruling the motion. This appeal followed.

Only two questions are here presented. They are that the trial court erred (1) in entering its order of abatement on November 17, 1956, and (2) in overruling the motion for substitution of the names of the successor guardians on January 15, 1957.

We shall continue to use the name McDonald to signify appellant since the trial court refused to substitute the names of the successor guardians for his name.

The appeal was originally argued on October 4, 1957, and was reargued January 20, 1958, by order of this court, on the point as to whether revivor or substitution was necessary.

Carlson contends that when McDonald was discharged the action became dormant or the judgment was abated so as to require a proceeding to revive under G. S. 1949, 60-3207, which provides:

"When one of the parties to an action dies, or his powers as a personal representative cease before the judgment, if the right of action survive in favor of or against his representatives or successors, the action may be revived and proceed in their names."

G. S. 1949, 60-3215 requires that an order of revivor by a plaintiff cannot be made without the consent of the defendant after the expiration of one year from the time the order "might have been first made," and G. S. 1949, 60-3221, provides that a dormant judgment may be revived in the same manner as is prescribed for reviving actions before judgment at any time within two years after it becomes dormant. Carlson vigorously contends that the action not only abated upon McDonald's discharge, which required the revivor proceeding, but that the judgment of January 31, 1955, was void because no action was pending upon which such judgment could be entered. We cannot agree that this contention is applicable in this case.

McDonald's contention is that we have merely a matter of substitution of the names of the successor guardians for that of the original guardian. He relies on G. S. 1949, 60-759, which provides, in part, as follows:

"The court or judge may, before or *after judgment, in furtherance of justice* and on such terms as may be proper, amend any pleading, process or proceeding by *adding or striking out the name of any party,* or correcting a mistake in the name of a party .. . . when such amendment does not change substantially the claim or defense. . . ." (Our emphasis.)

Some of the authorities cited, together with those we have noted through our own research, will be briefly referred to.

In *Railway Co. v. Moffatt*, 60 Kan. 113, 116, 55 Pac. 837, where Moffatt, as next friend for three minor children, filed the original petition, Moffatt died and one of the original minors who had become of age was substituted as next friend on an amended petition. It was contended that since there was no revivor proceeding filed, the action had abated. The court, in substance, there said that from its inception the infants had been the real parties to the proceeding because their rights were the ones involved and the next friend was merely a protector of the infants' rights; that a court will guard such minors' interests and if necessary, has the power to remove one next friend and appoint another. Since a next friend is neither technically nor substantially a party, no formal proceedings are necessary and the statute on revivor proceedings has no application. Hence, in the Moffatt case there was no abatement of the action.

Another similar case is *Shattuck v. Wolf*, 72 Kan. 366, 83 Pac. 1093, where Shattuck, who was guardian of certain minors, brought suit to collect on a note and foreclose a mortgage for the benefit of the minors. The guardian was discharged when the minors became of age and they were substituted for the guardian. The court therein held:

"(1) The suit did not abate when the wards became of age and the guardian was discharged, and revivor was neither necessary nor proper.

"(2) The wards were entitled to be substituted as plaintiffs in the suit in place of the guardian.

"(3) The proceedings for substitution were properly instituted by motion; and the court had jurisdiction to hear and determine, without further pleadings and without a jury, the facts presented by the motion." (Syl.)

Counsel does not cite, nor does our research reveal, any appropriate Kansas case involving a guardian of the person or estate of an incompetent, but we will mention a few of our cases which are analogous and we think helpful in determining the question now before us.

*Service v. Bank*, 62 Kan. 857, 62 Pac. 670, concerned a payee of a note who filed an action to recover on the note and foreclose a mortgage. Later the name of a bank to which the payee had endorsed the note and mortgage was substituted and the court therein stated:

"While it is a radical amendment to substitute one plaintiff for another, such an amendment is clearly within the power of the court, under the plain

provisions of the code, and *Weaver v. Young,* 37 Kan. 70, 14 Pac. 458, is directly in point and settles the question in favor of the substitution. In that case an amendment was permitted striking out the name of one party who was the sole plaintiff and substituting another and distinct party, after it was shown that the first name was used by mistake  .  .  .," (p. 860)

and the court further commented that in such cases it is vested with much discretion and will guard the rights of parties by permitting amendments to be made only where they will accomplish justice. The court there held the substitution did not operate unjustly toward the defendants. See, also, *Harlan v. Loomis,* 92 Kan. 398, 400, 140 Pac. 845; *Sundgren v. Topeka Transportation Co.,* 178 Kan. 83, 89, 283 P. 2d 444; *Russell v. American Rock Crusher Co.,* 181 Kan. 891, 897, 317 P. 2d 847.

Another field where there has been substitution of one party for another was presented by certain railroad controversies when the federal government had control under the Transportation Act of 1920 and in exercise thereof appointed agents for the director-general. (*Toothaker v. Railroad Co.,* 112 Kan. 304, 210 Pac. 1110.) In the above case at p. 307 it is stated that a change of agents "took place between the judgment in the district court and the hearing on appeal." The same attorneys appeared at all pertinent times—not for either agent personally as an officer of the government—but for the federal railroad agent, whatever individual held that position at the time. The court ruled that the new incumbent had done all that was necessary "by his appearance through his attorneys, which we hold resulted in an *informal* but *actual* substitution such as to preserve the jurisdiction of the court, the appeal under the present Kansas code being a part of the same proceeding with the original case." (Our emphasis.) (p. 307.) The Toothaker case was cited with approval in *Lukens v. Payne,* 118 Kan. 547, 548, 235 Pac. 841, as authority for the proposition that where,

"James C. Davis succeeded John Barton Payne as federal railroad agent on March 28, 1921, and the federal rule appears to be that he should have been substituted within a year. It may be, however, that so far as this feature of the case is concerned, the appearance in the name of Payne *after his representative capacity had ceased* brought about an *informal* but *effective substitution.*" (Our emphasis.) (p. 548.)

Another appropriate statement is found in the Sundgren case, *supra,* where the court reiterated the familiar rule that great latitude is given to a trial court in the matter of amendment of pleadings with a view of curing defects, supplying omissions and preventing injustice.

In view of the foregoing authorities, we can only conclude that McDonald was merely a protector of the rights of the two incompetent persons. They were the real parties to the proceeding from its inception. The action did not abate nor the judgment become dormant upon the discharge of McDonald so that a formal revivor proceeding was necessary under G. S. 1949, 60-3207 or 60-3221. A trial court has much discretion in such a situation as this and in furtherance of justice, it must be ever vigilant to guard the rights of the parties. Here the parties are incompetent persons and the trial court in furtherance of justice should have permitted substitution of the names of the successor guardians, as was sought by them in their motion. Such is definitely the rule prevailing in cases involving minors and we find no authority, nor is any presented by the parties, that persuades us to apply a different rule to incompetent persons, who are equally unable to care for themselves.

It cannot be denied that Carlson received benefits from his lease of the land which belonged to the incompetent persons. The proceedings and motions subsequent to the verdict and prior to the judgment were resisted by attorneys who represented—not McDonald—but whoever the guardian or guardians were at the time. When McDonald resigned the jurisdiction of the court was preserved by an *informal* but *actual* and *effective substitution* of Anna Ellis as guardian of the person and the estate of Mary Ann Diepenbrock, and of Clara Kogler as guardian of the person and the estate of August Henry Diepenbrock. The trial court therefore erred in ordering the action abated on November 17, 1956, and in refusing to substitute the names of Anna Ellis and Clara Kogler for the name of McDonald. Making the substitution order would have been merely a matter of procedure to be followed by the trial court and we think it was encumbent upon that court to do so in this case.

It follows that under G. S. 1949, 60-3317, this court is bound to ". . . render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

From the foregoing discussion, it is apparent that the motion to dismiss mentioned earlier herein must be and the same is hereby denied.

The orders of the trial court on both issues involved are reversed

with directions to substitute the name of Anna Ellis as guardian of the person and estate of Mary Ann Diepenbrock, an incompetent person, and to substitute the name of Clara Kogler as guardian of the person and estate of August Henry Diepenbrock, an incompetent person, for that of U. S. McDonald, as guardian of the estates and persons of Mary Ann Diepenbrock and August Henry Diepenbrock, both incompetent persons, wherever the name, U. S. McDonald, appears in the proceeding involved herein. The judgment is to be reinstated in the names of the aforesaid successor guardians.

PRICE, J., concurs in the result.